**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| PUFF CORPORATION, | |
| Plaintiff, | |
| | C.A. No. _____ |
| v. | |
| KANDYPENS, INC., | JURY TRIAL DEMANDED |
| Defendant. | |

## COMPLAINT

Plaintiff Puff Corporation ("***Puffco***" or "Plaintiff") hereby states its complaint against Defendant Kandypens, Inc. ("***Kandypens***" or "Defendant") for false advertising, unfair and deceptive trade practices, and trade libel in violation of the Lanham Act, 15 U.S.C. § 1125(a), Delaware's Uniform Deceptive Trade Practices Act, 6 Del. C. § 2531 *et seq.*, and Delaware common law, and alleges as follows:

## THE PARTIES

1. Plaintiff Puffco is a Delaware corporation with its principal place of business in Los Angeles, California. Puffco manufactures, advertises, distributes and sells various types of electronic vaporizers throughout the United States, including to consumers physically residing in the State of Delaware and this judicial District.

2. Upon information and belief, Defendant Kandypens is a Delaware corporation with its principal place of business in Santa Barbara, California. Upon information and belief, Kandypens can be served with process through its registered agent, Legalinc Corporate Services Inc., 651 N. Broad Street, Suite 206, Middletown, Delaware 19709. A true and correct copy of

information for Kandypens obtained online from the Delaware Secretary of State is attached as
Exhibit 1.

3.   Upon information and belief, Kandypens also manufactures, advertises, distributes, and
sells various types of electronic vaporizers throughout the United States, including to retailers
and consumers physically residing in the State of Delaware and this judicial District. By way of
example only, and as shown below in the screen shot of https://www.kandypens.com/stores/
(Kandypens' webpage showing a list of dealers of Kandypens' products in the State of
Delaware), Kandypens' products have been and are sold in this judicial District at Crystal
Dragon in Dover, DE; Summit High Smoke Shop in Middletown, DE; All in One Smoke Shop in
Newark, DE; and Frolic on Main Street in Newark, DE:



A true and correct copy of this Kandypens webpage, last accessed on July 6, 2020, is attached as
Exhibit 2.

4.   Upon information and belief, Kandypens owns, operates and controls the content on the Instagram pages titled "puffcolawsuit" and "puffco.lawsuit", available through the Instagram app for mobile devices and online at:

https://www.instagram.com/puffcolawsuit/?hl=en ("puffcolawsuit"); and

https://www.instagram.com/puffco.lawsuit/?hl=en ("puffco.lawsuit").

Upon information and belief, Kandypens owns or adopted the hashtag "#puffcolawsuit" and uses this hashtag to post content and comments on its "puffcolawsuit" Instagram page, with the posts made using the #puffcolawsuit hashtag also available through the Instagram app for mobile devices and online at: https://www.instagram.com/explore/tags/puffcolawsuit/?hl=en. Kandypens uses these Instagram pages and the hashtag to make the false advertising claims and engage in the deceptive trade practices, unfair competition, and trade libel at issue in this action, and these Instagram pages are directed to and accessible by actual and potential customers of Puffco and Kandypens in the State of Delaware and this judicial District. *See* Exhibits 4 - 8.

## JURISDICTION AND VENUE

5.   This Court has original subject matter jurisdiction over Plaintiff's federal claims in this action pursuant to Section 39 of the Lanham Act, 15 U.S.C. §§ 1121(a) and 1125(a), and 28 U.S.C. §§ 1331 and 1338. This Court has supplemental jurisdiction over the asserted  state law claims pursuant to 28 U.S.C. §§ 1338 and 1367(a) because they form part of the same case or controversy.

6.   This Court has both general and specific personal jurisdiction over Defendant Kandypens because, upon information and belief: (a) Kandypens is a Delaware corporation subject to general jurisdiction in the State of Delaware and this judicial District; (b) Kandypens regularly conducts business in the State of Delaware and this judicial District; (c) Kandypens has

committed acts of false advertising, deceptive trade practices, and trade libel in the State of Delaware and this judicial District, and Plaintiff's claims arise out of such acts; and (d) Plaintiff is a resident of the State of Delaware and has suffered harm in the State of Delaware and this judicial District from Defendant's unlawful actions, whether committed in or outside of the State of Delaware and this judicial District.

7.   Venue is proper in this judicial District pursuant to 28 U.S.C. § 1391 because Kandypens is incorporated in and therefore resides in the State of Delaware for purposes of § 1391.

## FACTUAL BACKGROUND

### A. Puffco and Its Business and Products

8.   Puffco is an award-winning manufacturer of a variety of electronic vaporizer products. Since the company's launch in 2013, Puffco has become one of the most well-known brands in the electronic vaporizer industry. Puffco owns several United States Trademark Registrations for its PUFFCO® mark or variations thereof, including: U.S. Reg. No. 4,856,420; U.S. Reg. No. 4,945,314; U.S. Reg. No. 4,908,874; and U.S. Reg. No. 5,341,414.

9.   One of Puffco's most successful products is the PEAK® vaporizer, an electrically-powered oral vaporizer for vaporizing oils, concentrates and other plant-derived extracts for personal inhalation. Puffco owns the PEAK® trademark, including United States Trademark Registration No. 5,656,606.

10. Puffco also owns several United States patents and patent applications related to its products, including U.S. Patent No. 10,517,334 and U.S. Patent No. D882867, as well as other issued patents and a number of pending patent applications. Puffco also owns the distinctive trade dress for its PEAK® vaporizers.

11. Puffco invested significantly in the development of its products and brands, including the PUFFCO® and PEAK® brands and products. The reputation and goodwill associated with Puffco and its products, along with the various intellectual property owned by and associated with Puffco and its products, are extremely important and valuable assets of Puffco.

12. Puffco has also invested significant amounts of money and substantial effort in the nationwide advertising and promotion of the company and its products, including its PEAK® vaporizers, which has resulted in great commercial success. For example, since January 15, 2018, Puffco has sold approximately 245,000 PEAK® vaporizers resulting in estimated aggregate sales revenue of nearly $55 Million dollars.

13. Social media is an important means of advertising in the electronic vaporizer field, including advertising through Instagram. Puffco uses social media to advertise and promote its business and its PUFFCO® and PEAK® brand products, including via its official Instagram page, available at https://www.instagram.com/puffco/?hl=en, which has over 358,000 followers.

14. Puffco's products, including its PEAK® vaporizer, have been continuously sold in U.S. commerce nationwide directly from Puffco's online retail store and through third party retailers, who distribute the products through online retail stores and physical retail locations.

15. Important material factors in a consumer's purchasing decision when considering electronic vaporizers include the design and reliability of the vaporizer, product warranties, and the reputation of the company that is the source of the vaporizer. The relative design and reliability of a vaporizer are indicative of the inherent quality of that particular vaporizer.

B.  **Defendant's Business and Illegal Competition and Unfair Trade Practices**

### 1)      Kandypens is a Competitor in the Electronic Vaporizer Market

16. Upon information and belief, Kandypens manufactures, advertises, distributes, and sells various types of electronic vaporizers throughout the United States.

17. Puffco and Kandypens are direct competitors in the electronic vaporizer market, and their vaporizer products are marketed and sold to the same consumers.

18. Kandypens advertises its competing vaporizer products, including online via its website https://www.kandypens.com, and via social media platforms, including Instagram. Kandypens' official Instagram page is available at https://www.instagram.com/kandypens/#, and is conspicuously branded and identified as originating from Kandypens as shown below:



A true and correct copy of this Kandypens Instagram page is attached as Exhibit 3.

### 2)      Kandypens' False Advertising, Unfair Competition, and Trade Libel

19. Apparently recognizing that Puffco is the market leader with the dominant market share of electronic vaporizer products, Kandypens has resorted to unfair and illegal practices to try to take vaporizer sales and market share away from Puffco, in hopes of capturing some of those diverted sales and market share for itself.

20. As detailed in subsections a) and b) below, Defendant has made and is making a number of false advertising and disparaging claims against Puffco and its PEAK® vaporizers, which are literally false on their face and/or by necessary implication.

**a)**     **False and Disparaging Claims that Puffco and Its PEAK® Vaporizers are Subject to a Pending Class Action Lawsuit**

21. On information and belief, Kandypens orchestrated the filing of a class-action lawsuit against Puffco in the action styled *Jacob Anderson, on behalf of himself and all others similarly situated v. Puff Corp.*, U.S.D.C. District of Arizona, Civil Action No. 2:19-cv-02126-DLR (the "Class Action Lawsuit"), with the named plaintiff Mr. Anderson an employee or otherwise affiliated with Kandypens and Kandypens the driving force behind the Class Action Lawsuit. The complaint in the Class Action Lawsuit was filed on March 29, 2019 and alleged that Puffco's PEAK® vaporizers were defective and that Puffco did not honor its warranties on the PEAK® vaporizers, and accused Puffco of fraud and breaching statutory, express and implied warranties. *See* Exhibit 9.

22. Upon information and belief, sometime in 2019 before the Class Action Lawsuit was filed, Kandypens created an Instagram page with the title and user name "puffcolawsuit." The "puffcolawsuit" Instagram page is available on the Instagram mobile app and online at https://www.instagram.com/puffcolawsuit/?hl=en. The "puffcolawsuit" Instagram page repeatedly uses the hashtags "#puffcolawsuit", "#puffco", and "#puffcopeak". As of July 9, 2020, the "puffcolawsuit" Instagram page had 154 posts by Kandypens and had 2,813 followers on Instagram and, upon information and belief, has been viewed by an even larger number of consumers. Exhibit 4 is a true and correct copy of a printout of the "puffcolawsuit" Instagram page, and Exhibit 5 is a true and correct copy of screen shots of certain posts on the "puffcolawsuit" Instagram page.

23. On information and belief, at or around the time of setting up its first "puffcolawsuit" Instagram page, Kandypens created or adopted the hashtag "#puffcolawsuit", which Kandypens uses to post content and make comments on its "puffcolawsuit" Instagram page. Kandypens' posts and comments made using the "#puffcolawsuit" hashtag are available on Instagram in aggregate form and may be viewed via the Instagram mobile app and online at https://www.instagram.com/explore/tags/puffcolawsuit/?hl=en. As of July 9, 2020, the "#puffcolawsuit" hashtag had been used by Kandypens to make 144 posts. Exhibit 6 is a true and correct copy of a printout of the aggregate of Kandypens' posts made using the "#puffcolawsuit" hashtag, and Exhibit 7 is a true and correct copy of screen shots of certain posts made using the "#puffcolawsuit" hashtag.

24. On information and belief, sometime after setting up its first puffcolawsuit Instagram page, Kandypens created a second Instagram page with the title and user name "puffco.lawsuit." The "puffco.lawsuit" Instagram page is available on the Instagram mobile app and available online at https://www.instagram.com/puffco.lawsuit/?hl=en. As of July 9, 2020, the "puffco.lawsuit" Instagram page had 62 followers but did not have any posts. A true and correct copy of a printout of the "puffco.lawsuit" Instagram page is attached as Exhibit 8.

25. On information and belief, Kandypens' founder and CEO, Graham Gibson, registered for the "puffcolawsuit" and "puffco.lawsuit" user names and the "#puffcolawsuit" hashtag using his official Kandypens email address and created or directed the creation of the "puffcolawsuit" and "puffco.lawsuit" Instagram pages and posts under the "#puffcolawsuit" hashtag, all on behalf of and for the benefit of Defendant Kandypens.

26. The "puffcolawsuit" and "puffco.lawsuit" Instagram pages and "#puffcolawsuit" hashtag posts are collectively referred to herein as the "Kandypens' Advertising Materials."

27. The "puffcolawsuit" Instagram page comprising part of Kandypens' Advertising Materials includes the following header:



Exhibit 4 at p.1.

28. The www.classaction.org/media/anderson-v-puff-corporation.pdf link in the header of the "puffcolawsuit" Instagram page is an active Internet link that takes viewers to a copy of the complaint in the Class Action Lawsuit. A screenshot of the first page from this link is below:



A true and correct copy of the complaint at the link on Kandypens' "puffcolawsuit" Instagram page is attached as Exhibit 9.

29. The aggregate page for Kandypens' Instagram posts made under the "#puffcolawsuit" hashtag includes this header:



Exhibit 6 at p. 1. It does not include a link to the Class Action Lawsuit, but it includes copies of the posts by Kandypens that are made on its "puffcolawsuit" Instagram page using the #puffcolawsuit hashtag. *Compare* Exhibits 4 & 5 *with* Exhibits 6 & 7.

30. Kandypens' second Instagram page, titled "puffco.lawsuit", includes the following header:



Exhibit 8. It does not include a link to the Class Action Lawsuit complaint, but nevertheless refers to the Class Action Lawsuit as it claims to be "[t]he new homepage for the puffco lawsuit." Id.

31. The Class Action Lawsuit was voluntarily dismissed on August 6, 2019 and the case terminated by the U.S. District Court for the District of Arizona on August 7, 2019. A true and correct copy of the PACER Docket Sheet for the Class Action Lawsuit and the plaintiffs' Notice of Voluntary Dismissal are attached as Exhibit 10. The dismissal and termination of the Class

Action Lawsuit came after Puffco appeared in the action and moved to dismiss the case for lack of jurisdiction and failure to state a claim for relief. Rather than address the merits of their claims, the plaintiffs chose to dismiss their case. *Id.,* Docket Sheet at Docket Entries 11, 16 & 17.

32. Since the dismissal and termination of the Class Action Lawsuit, the plaintiffs have not re-filed their case or claims and there are no other class action lawsuits against Puffco. Accordingly, since August 7, 2019 there have been no class action claims or lawsuits pending against Puffco.

33. Kandypens knew the Class Action Lawsuit was dismissed in early August 2019, but nevertheless continued to operate and maintain its two puffcolawsuit Instagram pages and its "#puffcolawsuit" posts comprising Kandypens' Advertising Materials, keeping the existing references to the Class Action Lawsuit, including the link to the complaint, and adding additional posts about the lawsuit and about Puffco and its products. Although no posts have been added to the "puffco.lawsuit" Instagram page, Kandypens has continued using its "#puffcolawsuit" hashtag and regularly added new posts to its "puffcolawsuit" Instagram page, allowed people to add comments to those posts, and responded to some of those third-party comments. As of July 9, 2020, the latest post made by Kandypens to its "puffcolawsuit" Instagram page was added on June 30, 2020. Exhibit 4; Exhibit 5 at p. 1; Exhibit 6; Exhibit 7 at p. 1.

34. For example, Defendant added the following post to its Kandypens' Advertising Materials on October 9, 2019:



This includes the statement "No wonder Puffco's facing a lawsuit", which is literally false and disparaging because the Class Action Lawsuit had been dismissed two months earlier. Defendant continues to publish this statement in its Kandypens' Advertising Materials. Exhibit 5 at p. 5; Exhibit 7 at p. 5.

35. Kandypens continues to falsely assert that there is a class action lawsuit pending against Puffco and its PEAK® vaporizers through its other postings and statements published in its Kandypens' Advertising Materials. This includes the following posts made on June 30, 2020, May 30, 2020, April 29, 2020, and April 23, 2020, indicating that people wanted to join the Class Action Lawsuit, with Kandypens failing to disclose the fact that there was no longer any such lawsuit; to the contrary, Kandypens' postings make the literally false and disparaging assertion that there is a class action lawsuit pending against Puffco when there is not:

*(i)      Posted June 30, 2020*



*(ii)     Posted May 30, 2020*



*(iii)*    *Posted April 29, 2020*



*(iv)*    *Posted April 23, 2020*



<u>Exhibit 5</u> at pp. 1-4; <u>Exhibit 7</u> at p. 1-4.

36. Kandypens also fails to disclose that it is the source and publisher of the Kandypens' Advertising Materials. Instead, Kandypens makes explicit references to the plaintiff's counsel in the Class Action Lawsuit and uses the pronoun "We" in several statements throughout its "puffcolawsuit" Instagram page and "#puffcolawsuit" hashtag posts, resulting in the necessary, but false, implication that the attorneys and/or plaintiffs in the Class Action Lawsuit are responsible for Kandypens' Advertising Materials when in truth a Puffco competitor is behind it all. <u>Exhibit 5</u> at pp. 7-11; <u>Exhibit 7</u> at pp. 7-11.

          **b)**      **False and Disparaging Claims that Puffco's PEAK® Vaporizers are Defective, Puffco Provides Poor Customer Service, and Puffco Does Not Honor Warranties for Its PEAK® Vaporizers Or Provide a Warranty on Its Atomizers.**

37. Kandypens' Advertising Materials also make the literally false and disparaging statements that Puffco's PEAK® vaporizer is a defective product, that Puffco provides poor customer service, and that Puffco does not honor its warranties on the PEAK® vaporizers.

38. Such literally false and disparaging statements by Kandypens include the following explicit statement at the beginning of the "puffcolawsuit" Instagram page:

> **PUFFCO LAWSUIT INFO**
> This page is dedicated to protecting customers who have been ripped off by Puffco by their defective products and sub-par customer service. DM us!
> **www.classaction.org/media/anderson-v-puff-corporation.pdf**

<u>Exhibit 4</u> at p. 1. And the following statement at the top of the "#puffcolawsuit" hashtag page:



("How woke can you be when knowingly selling a defective product?"). <u>Exhibit 6</u> at p. 1.

39. Other examples from Kandypens' Advertising Materials include the literally false and disparaging statements that Puffco does not honor its warranty for PEAK® vaporizers unless the customer paid the full retail price for the product, which is not true. Kandypens posts these statements on its "puffcolawsuit" Instagram page using the "#puffcolawsuit" hashtag as follows:



and



Exhibit 5 at pp. 12-13; Exhibit 7 at pp. 12-13. Kandypens' Advertising Materials also include the literally false and disparaging statement that Puffco does not provide a warranty on the atomizer component of its PEAK® vaporizers when in fact the atomizers have a one month warranty.

### 3) Kandypens' Challenged Claims are Statements of Fact and Constitute Commercial Advertising

40. The unambiguous statements, messages, and gist of Kandypens' Advertising Materials are not opinions, but instead are asserted statements of facts that are literally false on their face and/or by necessary implication and disparage Puffco and its products.

41. Alternatively, if the claims in Kandypens' Advertising Materials are not literally false, such claims are nevertheless implicitly false, deceptive and misleading, and disparage Puffco and its products.

42. Kandypens' Advertising Materials are commercial advertising. Defendant's statements in its Kandypens' Advertising Materials constitute commercial speech, are made by a competitor of Puffco, and are intended to and made for the purpose of influencing consumers not to purchase Puffco's vaporizers and instead purchase other vaporizers like those of Kandypens.

Further, Kandypens' Advertising Materials are widely available, as they are available without restriction on the Internet and through the Instagram app and have nearly 3,000 followers; they are also published to consumers of vaporizers, including Puffco customers, as shown by some of the viewer comments to Kandypen's numerous posts on its "puffcolawsuit" Instagram page.

### 4) The False Kandypens' Advertising Materials Materially Influence Consumer Purchasing Decisions, Deceives Consumers, and Are Harming Puffco

43. Kandypens is publishing and disseminating its Kandypens' Advertising Materials to consumers and potential consumers of electronic vaporizer products, including customers and potential customers of Puffco's PEAK® vaporizers and other Puffco brand vaporizers.

44. Defendant's false, deceptive and misleading claims in its Kandypens' Advertising Materials have and are, or are likely to, deceive consumers of electronic vaporizers and, by doing so, influence their purchasing decisions.

45. Defendant's false, deceptive and misleading claims in its Kandypens' Advertising Materials speak to and address inherent qualities and characteristics of Puffco's vaporizers, and specifically Puffco's PEAK® brand vaporizers, namely their design, functionality, quality of workmanship, and warranty coverage, and also speak to and address the reputation of Puffco and its products.

46. Defendant's false, deceptive and misleading claims are material to consumers who purchase vaporizers and who are considering whether to purchase a Puffco vaporizer, including the Puffco PEAK® vaporizers, or whether to purchase competing vaporizers like those of Kandypens.

47. Defendant's conduct is causing irreparable harm to Puffco's reputation and the reputation of its PEAK® vaporizers and other products. Defendant's false, deceptive and misleading claims

taint the Puffco and PEAK® brand names and the reputation of Puffco's vaporizer products and thereby compromise Puffco's ability to effectively market and sell these products in the future.

48. Defendant's conduct has caused and will continue to cause Puffco to suffer damages, including, but not limited to, lost sales, lost profits, and damaged goodwill, as well as legal expenses, including costs and attorneys' fees.

### 5) Kandypens' Conduct Is Knowing, Intentional, Willful and Malicious

49. On information and belief, Kandypens has engaged in the conduct at issue with reckless disregard of Puffco's rights, and/or has engaged in such conduct intentionally, willfully, and maliciously with knowledge that the claims being made are false, deceptive, misleading, and disparaging and with the intention to harm Puffco and to deceive consumers. On information and belief, Defendant has further engaged in the conduct at issue with the intent to divert sales of vaporizer products from Puffco so that Kandypens can instead obtain all or a portion of those sales, with Kandypens directly profiting from such ill-gotten sales.

50. The knowing, intentional, willful, and malicious nature of Defendant's false advertising, deceptive trade practices, and trade libel carried out through Kandypens' Advertising Materials is further shown by and consistent with Kandypens' and its principal Gibson's pattern and practice of unfair competition, both against Puffco and others. By way of example:

- Gibson was sued by the Federal Trade Commission for false advertising, including charging customers for "free" trials, and saying his products had been endorsed by Oprah Winfrey and Rachael Ray when they had not, which Gibson settled with the FTC in 2012 and agreed to pay the agency $1.5 million.

- Kandypens has infringed on Puffco's patent rights, forcing Puffco to assert counterclaims to enforce its rights and defend its patent. *See Kandypens, Inc. v. Puff Corp.*, 2:20-cv-00358 (C.D. Cal.).

- Kandypens has copied the PUFFCO PRO® vaporizing pen with a product named after Puffco's founder and CEO, Roger Volodarsky, naming the product to refer to him ("The R.O.G.") and using his likeness in social media advertisements for that Kandypens knock-off product:



and flaunting such copying by acquiring and then returning disassembled Puffco products to Puffco with a handwritten note from Kandypens' Gibson on his business card stating "Thanks for the inspiration pal!":



- Kandypens has intentionally misappropriated and copied the design of Puffco's distinctive trade dress for its PEAK® vaporizer, forcing Puffco to pursue litigation to enforce its rights. *See Puff Corporation v. Kandypens, Inc.*, 3:20-cv-333 (W.D.N.C.).

- Kandypens has been sued by a third-party for counterfeiting and selling products that falsely bear the UL® certification mark without any such certification or testing by UL, LLC in *UL LLC v. AFG Distribution, Inc.*, 19-cv-2724 (N.D. Ill).

- Kandypens and Gibson have been sued by a third-party for trademark infringement in *Waxxy Vapir, Inc. v. Gibson et al.*, 0:16-cv-60298-WJZ (S.D. Fla.).

## CAUSES OF ACTION

## COUNT I-FALSE ADVERTISING UNDER SECTION 43(a) OF THE LANHAM ACT
## (15 U.S.C. §1125(a))

51. Puffco repeats and realleges each of the allegations contained in paragraphs 1 through 50 above as if fully set forth herein.

52. Puffco's PEAK® vaporizers and Kandypens' competing vaporizers are sold in interstate commerce in the United States.

53. Kandypens' Advertising Materials have been and are published, disseminated and discussed in interstate commerce.

54. Kandypens' Advertising Materials are literally false and misleading.

55. When considered in full context, Kandypens' Advertising Materials falsely and explicitly state and/or falsely state by necessary implication that:

- Puffco and its PEAK® products are the subject of an ongoing class action lawsuit, when that is not true and the only such lawsuit was dismissed in early August 2019.

- There is an ongoing class action against Puffco for its PEAK® products that consumers can join, which is not true.

- Puffco and its PEAK® products are facing ongoing claims for fraud and breach of warranties for a defective product and not honoring warranties, which is not true.

- The "puffcolawsuit" Instagram page and its source are dedicated to protecting Puffco customers and originates from the attorneys and/or plaintiffs in the Class Action Lawsuit or someone other than a Puffco competitor, when the truth is the page is a means of false advertising, deceptive trade practices and unfair competition, and trade libel by Puffco competitor Kandypens.

- Puffco's products, including its PEAK® vaporizers, are defective, when in truth they are high quality, market-leading products.

- Puffco provides poor customer service, which is not true.

- Puffco's warranties only apply if customers paid the full retail price for the PEAK® vaporizers, and the atomizers of the PEAK® vaporizers are not covered by any warranty, which is not true.

56. Kandypens' Advertising Materials and Defendant's literally false and misleading advertising are likely to deceive consumers of vaporizers.

57. Kandypens' Advertising Materials and Defendant's literally false and misleading advertising speak to and address inherent qualities and characteristics of Puffco's vaporizers, namely their design, reliability, functionality, and quality of workmanship, and are likely to influence customers' decisions in purchasing vaporizers, and materially affect purchasing decisions by relevant consumers.

58. Kandypens' Advertising Materials and Defendant's literally false and misleading advertising has caused and will continue to cause irreparable harm to Puffco. Unless Defendant is enjoined from continuing its unlawful false advertising, Puffco will suffer irreparable harm.

59. As a direct and proximate result of Kandypens' Advertising Materials and Defendant's literally false and misleading advertising, Puffco has suffered damages in an amount to be determined at trial.

60. Kandypens' Advertising Materials and Defendant's literally false and misleading advertising and promotion in interstate commerce constitutes false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

61. Pursuant to Section 34 of the Lanham Act, 15 U.S.C. § 1116, Puffco is entitled to preliminary and permanent injunctive relief to prevent damage to Puffco and to prohibit Defendant from further violations of Section 43(a) of the Lanham Act as further set forth in the Prayer for Relief below. Puffco is also entitled to equitable relief in the form of affirmative corrective advertising by Defendant.

62. Pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117(a), Puffco is entitled to monetary damages, corrective advertising costs, Defendant's profits, costs, and prejudgment interest.

63. This is an exceptional case under Section 35 of the Lanham Act, 15 U.S.C. § 1117(a), entitling Puffco to recover its attorneys' fees and up to three times its actual damages.

64. Pursuant to Section 36 of the Lanham Act, 15 U.S.C. § 1118, Puffco is entitled to a destruction order requiring that all advertisements in Defendant's possession or control bearing the false or misleading descriptions or representations be delivered up and destroyed.

## COUNT II-VIOLATION OF THE UNIFORM DECEPTIVE TRADE PRACTICES ACT OF DELAWARE (6 Del. C. §§ 2531 - 2536)

65. Puffco repeats and realleges each of the allegations contained in paragraphs 1 through 64 above as if fully set forth herein.

66. Kandypens' Advertising Materials represent that Puffco's vaporizer products have characteristics, uses, or benefits that they do not have.

67. Kandypens' Advertising Materials represent that Puffco's vaporizer products are of a particular standard, quality, or grade that they are not. More specifically, Defendant's representations are that Puffco's vaporizers are of a lower standard, quality, and grade than they actually are.

68. Kandypens' Advertising Materials disparage Puffco's vaporizer products by making false or misleading factual representations.

69. Kandypens' Advertising Materials create a likelihood of confusion or of misunderstanding about Puffco and Puffco's vaporizers.

70. Defendant's false, deceptive, misleading and disparaging advertising and promotional activities violate Delaware's Uniform Deceptive Trade Practice Act, 6 Del. C. § 2532, including subsections (a)(5), (a)(7), (a)(8), and (a)(12).

71. Defendant has published and disseminated Kandypens' Advertising Materials containing false, deceptive, misleading and disparaging representations to the public with the intent to cause Puffco to lose sales and business, and with the intent to increase Kandypens' business and sales of competing products as a result. Puffco has suffered pecuniary loss as a direct and proximate result of Defendant's unlawful activities.

72. Defendant's unlawful activities have caused, and will continue to cause, irreparable harm to Puffco. Unless Defendant is enjoined from continuing its unlawful activities, Puffco will continue to suffer irreparable harm.

73. Pursuant to 6 Del. C. § 2533(a), Puffco is entitled to preliminary and permanent injunctive relief against Defendant.

74. Defendant's deceptive trade practices have been knowing, intentional and willful, making this an exceptional case. Pursuant to 6 Del. C. § 2533(b), Puffco is entitled to its attorneys' fees and costs of this action.

75. Pursuant to 6 Del. C. § 2533(c), Puffco is entitled to an award of treble damages because Puffco is entitled to recover actual damages under the common law or other statutes of the State of Delaware (*see* Count III).

## COUNT III-TRADE LIBEL UNDER DELAWARE COMMON LAW

76. Puffco repeats and realleges each of the allegations contained in paragraphs 1 through 75 above as if fully set forth herein.

77. Kandypens' Advertising Materials contain several false and disparaging statements about Puffco and its products, including Puffco's PEAK® vaporizers.

78. Defendant published the false and disparaging statements in Kandypens' Advertising Materials with the intent to harm Puffco and cause Puffco pecuniary loss. Given the nature of its statements, Defendant reasonably should recognize that publication of its false and disparaging statements would result in harm and pecuniary loss to Puffco.

79. Puffco has suffered pecuniary loss as a direct and proximate result of Defendant's unlawful activities.

80. Defendant knew that its statements in its Kandypens' Advertising Materials were false. Alternatively, Defendant made some or all of its false statements in its Kandypens' Advertising Materials in reckless disregard of the truth or falsity of those statements.

81. Defendant's false and disparaging statements about Puffco and its products in Kandypens' Advertising Materials constitute unlawful trade libel in violation of Delaware common law.

82. Defendant's unlawful trade libel was committed, and continues to be committed, as part of its unfair competition against Puffco.

83. Defendant's unlawful activities have caused, and will continue to cause, irreparable harm to Puffco. Unless Defendant is enjoined from continuing its unlawful activities, Puffco will continue to suffer irreparable harm. Accordingly, Puffco is entitled to preliminary and permanent injunctive relief against Defendant.

84. As a direct and proximate result of Kandypens' Advertising Materials and Defendant's trade libel, Puffco has suffered damages in an amount to be determined at trial.

### PRAYER

WHEREFORE, Puffco prays for judgment against Kandypens and relief as follows:

(1)     That the Court enter judgment that Defendant Kandypens has engaged in false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); has engaged in unfair methods of competition and unfair or deceptive acts or practices in violation of Delaware's Uniform Deceptive Trade Practices Act, 6 Del. C. § 2532; and has engaged in trade libel in violation of Delaware common law;

(2)     On Count I, that Puffco be awarded monetary damages; corrective advertising costs; disgorgement of Defendant's profits; enhanced damages; Puffco's attorneys' fees; Puffco's costs; preliminary and permanent injunctive relief prohibiting Kandypens, and its employees, officers, directors, agents, representatives, attorneys, successors, and assigns, and all persons in active concert or participation with any of them, from further violations of the Lanham Act and permanent injunctive relief requiring Defendant to disseminate corrective advertising materials, including an order directing Defendant to file with the Court and serve on Puffco within thirty days after entry of the injunction a written report, under oath, setting forth in detail the manner and form in which Defendant has complied with the injunction; and a destruction order requiring that Defendant deliver up and destroy all advertising and promotional materials deemed false, deceptive, and/or misleading;

(3)     On Count II, that Puffco be granted preliminary and permanent injunctive relief prohibiting further violations of Delaware's Uniform Deceptive Trade Practices Act, 6 Del. C. § 2532; trebling of Puffco's actual damages awarded for Defendant's violations of other

Delaware common law; attorneys' fees; and costs;

(4)     On Count III, that Puffco be granted preliminary and permanent injunctive relief requiring the removal of Kandypens' Advertising Materials and all disparaging statements therein from public view and prohibiting Defendant from further trade libel against Puffco and its products; monetary damages; and costs;

(5)     An award of prejudgment interest;

(6)     A declaration that this case is exceptional and an award to Puffco of its reasonable costs and expenses in this action, including reasonable attorneys' fees under 15 U.S.C. § 1117(a) and 6 Del. C. §2533, and any other applicable statutes or laws, including pre- and post-judgment interest; and

(7)     On each of Puffco's claims for relief, such other and further relief as the Court deems just and proper under the circumstances.

### DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure and D. Del. LR 38.1, Plaintiff Puffco demands a trial by jury on all issues so triable.

Dated:  July 22, 2020

Of Counsel:

Benjamin F. Sidbury
BRYAN CAVE LEIGHTON
   PAISNER LLP
301 South College Street
Suite 3900
Charlotte, NC 28202
(704) 749-8999
ben.sidbury@bclplaw.com

Eric P. Schroeder
Damon J. Whitaker

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com

*Attorneys for Plaintiff*
*Puff Corporation*

BRYAN CAVE LEIGHTON
  PAISNER LLP
1201 W. Peachtree Street NW
14th Floor
Atlanta, GA 30309
(404) 572-6600
eric.schroeder@bclplaw.com
damon.whitaker@bclplaw.com