IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PUFF CORPORATION,

    Plaintiff,

v.

KANDYPENS, INC.,

    Defendant.

Civil Action No. 20-00976-CFC

---

Anne Shea Gaza and Robert M. Vrana, YOUNG CONAWAY STARGATT & TAYLOR LLP, Wilmington, Delaware; Eric P. Schroeder and Damon J. Whitaker, BRYAN CAVE LEIGHTON PAISNER LLP, Atlanta, Georgia; Daniel A. Crowe, BRYAN CAVE LEIGHTON PAISNER LLP, St. Louis, Missouri; Colin D. Dailey, BRYAN CAVE LEIGHTON PAISNER LLP, Charlotte, North Carolina

    *Counsel for Plaintiff*

Stephen B. Brauerman and Peter B. Ladig, BAYARD, P.A., Wilmington, Delaware; Sean J. O'Hara, KERCSMAR & FELTUS PLLC, Scottsdale, Arizona

    *Counsel for Defendant*

**MEMORANDUM OPINION**

October 28, 2020
Wilmington, Delaware

COLM F. CONNOLLY
UNITED STATES DISTRICT JUDGE

Plaintiff Puff Corporation (Puffco) has sued Defendant KandyPens, Inc. for false advertising and unfair competition in violation of the Lanham Act, 15 U.S.C. §1125(a)(1)(B); unfair trade practices in violation of Delaware's Uniform Deceptive Trade Practices Act, 6 Del. C. §§2531–2536, and trade libel in violation of Delaware common law. D.I. 13 at 43. Pending before me is KandyPens's Motion to Transfer Venue. D.I. 10. KandyPens requests in its motion that I transfer the case to the Central District of California "[p]ursuant to 28 U.S.C. § 1404(a)." D.I. 10 at 1.

I. BACKGROUND

Puffco and KandyPens are both Delaware companies. Puffco's principal place of business is in Los Angeles, California. D.I. 13 ¶ 1. KandyPens's principal place of business is in Arizona. D.I. 11 at 1. Both Puffco and KandyPens advertise, distribute, and sell various types of electronic vaporizers throughout the United States. D.I. 13 ¶¶ 1, 3.

Puffco alleges in its Amended Complaint that KandyPens "orchestrated the filing of a class-action lawsuit against Puffco," created two Instagram accounts dedicated solely to spreading information about that lawsuit, and directly messaged vaporizer consumers on Instagram to spread false claims about Puffco and its

vaporizers. D.I. 13 ¶¶ 21, 22, 24, 26. According to Puffco, KandyPens continues to maintain these Instagram accounts and message consumers directly about the class-action lawsuit even though the lawsuit was dismissed in August 2019. D.I. 13 ¶¶ 35, 38. Puffco also alleges that KandyPens has falsely stated on Instagram postings that Puffco's vaporizers are defective and that Puffco does not honor its warranties and provides poor customer service. D.I. 13 ¶¶ 44–46.

KandyPens and Puffco are parties in two other pending lawsuits. On January 13, 2020, KandyPens filed a complaint in the Central District of California asking for a declaratory judgment that a patent owned by Puffco is invalid. Puffco has asserted a counterclaim for patent infringement in the California case. On July 23, 2020, Puffco filed a complaint against KandyPens in the Western District of North Carolina, alleging trade dress infringement under the Lanham Act and unfair and deceptive trade practices in violation of North Carolina law.

## II.   DISCUSSION

### A.   Legal Standards

Section 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Puffco does not dispute that this action could have been brought in the

2

Central District of California. D.I. 14. Thus, the only issue before me is whether I should exercise my discretion under § 1404(a) to transfer the case to that district.[1]

Defendants have the burden "to establish that a balancing of proper interests weigh[s] in favor of the transfer." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970). This burden is heavy. "[U]nless the balance of convenience of the parties is *strongly* in favor of [the] defendant[s], the plaintiff's choice of forum should prevail." *Id.* (emphasis in original) (internal quotation marks and citation omitted).

Although there is "no definitive formula or list of the factors to consider" in a transfer analysis, the Third Circuit identified in *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995), 12 interests "protected by the language of § 1404(a)." *Id.* Six of those interests are private:

> [1] plaintiff's forum preference as manifested in the original choice; [2] the defendant's preference; [3] whether the claim arose elsewhere; [4] the convenience of the parties as indicated by their relative physical and financial condition; [5] the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and [6] the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

---

[1] The motion to transfer was filed before Puffco filed its Amended Complaint. Puffco states in its brief filed in opposition to the motion that it "believes its filing of the Amended Complaint . . . moots the Motion to Transfer." D.I. 14 at 1. Because Puffco made no argument in support of this assertion, I do not address it.

3

*Id.* (citations omitted). The other six interests are public in nature:

> [7] the enforceability of the judgment; [8] practical considerations that could make the trial easy, expeditious, or inexpensive; [9] the relative administrative difficulty in the two fora resulting from court congestion; [10] the local interest in deciding local controversies at home; [11] the public policies of the fora; and [12] the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* at 879–80 (citations omitted). As the parties have not identified relevant factors beyond these 12 interests,[2] I will balance the *Jumara* factors in deciding whether to exercise the discretion afforded me by § 1404(a).

### B. Analysis of the *Jumara* Factors

#### 1. Plaintiff's Forum Preference

This factor clearly weighs against transfer. The parties agree on that much. They disagree, however, about the amount of weight I should give this factor in conducting the balancing of interests called for by *Jumara*. Puffco contends that I should give its forum choice "paramount consideration." D.I. 14 at 9. KandyPens argues that Puffco's forum choice "should be afforded minimal weight" because Puffco has no physical presence in Delaware. D.I. 11 at 7.

---

[2] KandyPens seems to suggest in its reply brief filed in support of its motion that the existence of related lawsuits between the parties in California and North Carolina could constitute an additional factor. D.I. 16 at 8. As discussed below, I treat the existence of other lawsuits as falling within *Jumara*'s "practical considerations" factor.

4

In *Shutte*, the Third Circuit held that "[i]t is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request" brought pursuant to § 1404(a), and that this choice "should not be lightly disturbed." 431 F.2d at 25 (internal quotation marks and citation omitted). The parties have not cited and I am not aware of any Third Circuit or United States Supreme Court case that overruled *Shutte*. *Jumara* cited *Shutte* favorably and reiterated *Shutte*'s admonition that "the plaintiff's choice of venue should not be lightly disturbed." *Jumara*, 55 F.3d at 879 (internal quotation marks and citation omitted). Thus, binding Third Circuit law compels me to treat Puffco's forum choice as "a paramount consideration" in the § 1404(a) balancing analysis.

KandyPens cites in support of its position certain opinions issued by district court judges in the Third Circuit that appear to assign less weight to a plaintiff's forum choice when the forum is not the plaintiff's "home turf"—that is, if the plaintiff has limited or no facilities, operations, or employees in the forum. I am not, however, persuaded that Puffco's choice should be discounted or minimized because it has no physical connections with Delaware. I will instead follow Judge Stapleton's lead in *Burroughs Wellcome Co. v. Giant Food, Inc.*, 392 F. Supp. 761 (D. Del. 1975).

Like Judge Stapleton, I read *Shutte*'s "statement of 'black letter law' as an across-the-board rule favoring plaintiff's choice of forum." *Id.* at 763. As Judge

5

Stapleton explained in rejecting the "home-turf" rule argued by the defendant in *Burroughs*:

> The court's decision in *Shutte* to give weight to the plaintiff's choice of forum is not an application of any of the criteria recited in [§ 1404(a)]. Assuming jurisdiction and proper venue, weight is given to plaintiff's choice because it is plaintiff's choice and a strong showing under the statutory criteria in favor of another forum is then required as a prerequisite to transfer. One can perhaps debate whether plaintiff's choice should be given any weight at all in a transfer context, but assuming it is to be given some weight in cases where the plaintiff lives in the forum state, it is difficult to see why it should not also be given weight when the plaintiff lives in [another] state. . . . [The] plaintiff's contact or lack thereof with the forum district will ordinarily be reflected in the 'balance' of conveniences, but that contact, per se, is unrelated to anything in *Shutte*, or Section 1404(a).

*Id.* at 763 n.4.

I, too, find it difficult to understand why the plaintiff's forum choice in and of itself merits less weight when the plaintiff has no ties to the selected forum or even when the facts underlying the controversy occurred elsewhere. I do not mean to suggest that these two latter considerations will not impact the overall transfer analysis. On the contrary, because these considerations are subsumed and given weight under *Jumara* factors 3 (whether the claim arose elsewhere), 4 (convenience of the parties), 5 (convenience of the witnesses), 6 (location of books and records), 8 (practical considerations that could make the trial easy, expeditious, or inexpensive), and 10 (the local interest in deciding local controversies at home),

a defendant seeking to transfer a case when neither the plaintiff nor the facts giving rise to the case have any connection to the selected forum will generally have less difficulty in meeting its burden to establish that the *Jumara* factors weigh strongly in favor of transfer.

### 2. Defendant's Forum Preference

The parties agree that this factor favors transfer. D.I. 11 at 8; D.I. 14 at 11.

### 3. Whether the Claim Arose Elsewhere

KandyPens argues that the claims arose neither in Delaware nor California, but instead in Arizona. D.I. 11 at 9 n.4. False advertising and deceptive trade practice claims, however, arise where a customer is misled by the challenged conduct. *Joint Stock Soc. Trade House of Descendants of Peter Smirnoff, Official Purveyor to the Imperial Court v. Heublein, Inc.*, 936 F. Supp. 177, 188 (D. Del. 1996). Because both KandyPens and Puffco sell and advertise on Instagram their competing products in all states, the alleged claims arise in both Delaware and California. Accordingly, this factor is neutral.

### 4. The Convenience of the Parties as Indicated by Their Relative Physical and Financial Condition

This factor is also neutral. "[A]bsent some showing of a unique or unexpected burden, a company should not be successful in arguing that litigation in its state of incorporation is inconvenient." *ADE Corp. v. KLA-Tencor Corp.*, 138 F. Supp. 2d 565, 573 (D. Del. 2001). KandyPens makes the conclusory assertion

7

that "[r]equiring [it] and any employee witnesses to continually fly out to this District to defend against Puffco's claims . . . would pose a 'unique or unusual burden . . . .'" D.I. 16 at 4. But it offers no factual support for this claim other than the fact that its principal place of business in Arizona is closer to California than it is to Delaware.

Because the Central District of California and this district are equally convenient for Puffco and Delaware is not a uniquely or unusually inconvenient forum for KandyPens, this factor is neutral.

### 5. The Convenience of Witnesses

Under Third Circuit law, the district court is to consider the convenience of witnesses "only to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879; *see also Smart Audio Techs., LLC v. Apple, Inc.*, 910 F. Supp. 2d 718, 732 (D. Del. 2012) (noting that this factor applies only insofar as "a witness actually will refuse to testify absent a subpoena"). In addition, "witnesses who are employed by a party carry no weight," because "each party is able, indeed, obligated to procure the attendance of its own employees for trial." *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 203 (D. Del. 1998).

According to KandyPens, all non-party witnesses are in either California or Arizona. D.I. 11 at 9; D.I. 16 at 4. Neither party identifies a non-party witness

8

from Delaware. But KandyPens does not identify any potential witness who would not be available for trial in Delaware. Because no record evidence demonstrates that necessary witnesses will refuse to appear in Delaware for trial without a subpoena, this factor is neutral.

### 6. The Location of Books and Records

*Jumara* instructs me to give weight to the location of books and records only "to the extent that the files [and other documentary evidence] could not be produced in the alternative forum." 55 F.3d at 879. KandyPens asserts that "none of the evidence is located in this District," D.I. 11 at 10, but it has not identified any evidence that could not be produced in Delaware. It also admits that some evidence relevant to this action is located outside of the Central District of California. D.I. 11 at 10. Accordingly, this factor is neutral. *See Signal Tech, LLC v. Analog Devices, Inc.*, 2012 WL 1134723, at *3 (D. Del. Apr. 3, 2012) ("[T]here are no records identified as only being available in one of the two locations. Thus, under Third Circuit law, . . . the location of the books and records is a neutral factor." (internal footnote omitted)).

### 7. The Enforceability of the Judgment

The parties agree this factor is neutral. D.I. 14 at 14; D.I. 16 at 5.

9

### 8. Practical Considerations

*Jumara* instructs me to give weight to "practical considerations that could make the trial easy, expeditious, or inexpensive." 55 F.3d at 879. KandyPens argues that a transfer to California would "avoid duplicative litigation" and therefore increase efficiency and "eliminate significant costs." D.I. 11 at 10. But although this case and the California case share the same parties and at least some of the same products, the overlap between Puffco's claims for trade libel, false advertising, unfair competition, and deceptive trade practices in this case and the patent infringement claims at issue in the California case is limited.

Although I did not consider issues of economic cost and logistical convenience with respect to potentially relevant KandyPens employees and other witnesses when I assessed factors 4 and 5, it is appropriate to consider these issues in assessing "practical considerations." *See Joao Control & Monitoring Sys., LLC v. Ford Motor Co.*, 2013 WL 4496644, at *7 (D. Del. Aug. 21, 2013); *Mitel Networks Corp. v. Facebook, Inc.*, 943 F. Supp. 2d 463, 475–76 (D. Del. 2013). The majority of the potential witnesses come from California and Arizona, and therefore the inconvenience that traveling to Delaware would cause them and the costs associated with that travel weigh in favor of transfer.

### 9. Relative Administrative Difficulty Due to Court Congestion

This factor is neutral. Both courts are among the busiest in the country.

10

### 10. Local Interest in Deciding Local Controversies at Home

The parties agree that this factor is neutral. D.I. 11 at 11; D.I. 14 at 18.

### 11. Public Policies of the Fora

KandyPens argued in its opening brief filed in support of its motion that this factor was neutral. Both parties, however, are Delaware companies; and Delaware's public policy encourages Delaware corporations to resolve their disputes in Delaware courts. *Round Rock Research, LLC v. Dell, Inc.*, 904 F. Supp. 2d 374, 378 (D. Del. 2012). Thus, this factor weighs against transfer.

In its reply brief, KandyPens argues that two public policies counterbalance Delaware's interest in resolving disputes between its corporate citizens. KandyPens points first to what it calls California's "strong public policy interest" in having its courts resolve claims of unfair competition brought by and against companies that operate within its borders. D.I. 16 at 7. KandyPens cites no authority in support of this assertion; but assuming California had such a policy, it would not apply here since KandyPens's principal place of business is in Arizona, not California. D.I. 11 at 1.

KandyPens next argues that "the public policy against forum shopping weighs in favor of transfer." D.I. 16 at 7 (citation omitted). In a federal court, however, there is no policy against a plaintiff's forum shopping that would favor a defendant's request for a transfer of venue. On the contrary, the principle that a

11

plaintiff can lawfully engage in forum shopping is sufficiently fundamental to our federal system that the Supreme Court has called that forum choice a "venue privilege." *See Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49, 63 (2013) ("Because plaintiffs are ordinarily allowed to select whatever forum they consider most advantageous (consistent with jurisdictional and venue limitations), we have termed their selection the 'plaintiff's venue privilege.'"). On at least two occasions in the context of a § 1404(a) transfer motion, the Supreme Court has recognized the legitimacy of forum shopping by a plaintiff.

In *Van Dusen v. Barrack,* 376 U.S. 612 (1964), the Court held that when a diversity suit is transferred under § 1404(a) at the request of the defendant, the transferee court is required to follow the choice-of-state-law rules that would have existed in the transferor court. *Id.* at 639. The Court reasoned that § 1404(a) should not deprive the plaintiff of state-law advantages it would have enjoyed in the transferor court. *Id.* at 633–34. The Court explained that "[section] 1404(a) was not designed to narrow the plaintiff's venue privilege . . . but rather the provision was simply to counteract the inconveniences that flowed from the venue statutes by permitting transfer to a convenient federal court." *Id.* at 635.

In *Ferens v. John Deere Co.*, 494 U.S. 516 (1990), the Court extended *Van Dusen*'s holding to § 1404(a) transfers made at a plaintiff's request. *Id.* at 519.

Ferens, who had been injured in a Pennsylvania farm accident, failed to file a tort action in Pennsylvania within the applicable two-year statute of limitations. *Id.* In the third year after the accident, Ferens and his wife filed a diversity contract case against John Deere in the Western District of Pennsylvania and then filed a second diversity tort action against John Deere in the Southern District of Mississippi, where, under Mississippi choice-of law rules, a six-year statute of limitations applied. *Id.* at 519–20. At this point, to use the Supreme Court's words, "the Ferenses took their forum shopping a step further," as they requested and obtained a § 1404(a) transfer of the Mississippi action to the Western District of Pennsylvania. *Id.* at 520. The Pennsylvania district court consolidated the actions but held that because the Ferenses had moved for the transfer as plaintiffs, the *Van Dusen* rule did not apply and therefore Pennsylvania's two-year statute of limitations barred the Ferenses' tort claims. *Id.* at 520–21. The Third Circuit affirmed the district court's holding. *Id.* at 521.

In reversing the Third Circuit's decision, the Supreme Court explained in relevant part:

> The text of § 1404(a) may not say anything about choice of law, but we think it not the purpose of the section to protect a party's ability to use inconvenience as a shield to discourage or hinder litigation otherwise proper. The section exists to eliminate inconvenience without altering permissible choices under the venue statutes.
> \* \* \* \*

13

> [E]ven without § 1404(a), a plaintiff already has the option of shopping for a forum with the most favorable law. The Ferenses, for example, had an opportunity for forum shopping in the state courts because both the Mississippi and Pennsylvania courts had jurisdiction and because they each would have applied a different statute of limitations. Diversity jurisdiction did not limit these forum shopping opportunities; instead, under *Erie* [*Railroad Co. v. Tompkins*, 304 U.S. 64 (1938)], the federal courts had to replicate them. Applying the transferor law would not give a plaintiff an opportunity to use a transfer to obtain a law that he could not obtain through his initial forum selection. If it does make selection of the most favorable law more convenient, it does no more than recognize a forum shopping choice that already exists. This fact does not require us to apply the transferee law. Section 1404(a), to reiterate, exists to make venue convenient and should not allow the defendant to use inconvenience to discourage plaintiffs from exercising the opportunities [for forum shopping] that they already have.
>
> * * * *
>
> The desire to take a punitive view of the plaintiff's actions should not obscure the systemic costs of litigating in an inconvenient place.
>
> * * * *
>
> Our rule may seem too generous because it allows the Ferenses to have both their choice of law and their choice of forum, or even to reward the Ferenses for conduct that seems manipulative. We nonetheless see no alternative rule that would produce a more acceptable result.

*Id.* at 525–31. This quoted language makes clear to me that a plaintiff's forum choice, even if it is deemed manipulative, is irrelevant for § 1404(a) purposes. Thus, contrary to KandyPens's argument, there is no public policy against forum shopping that weighs in favor of a transfer. And because Delaware's interest in

14

resolving disputes between its corporate citizens is the only applicable public policy of the competing fora, factor 11 weighs against transfer.

### 12. Familiarity of the Trial Judges with the Applicable State Law in Diversity Cases

This case is not a diversity action and therefore this factor is neutral.

\* \* \* \*

In sum, of the 12 *Jumara* factors, two weigh in favor of transfer, two weigh against transfer, and eight are neutral. Of the two factors that weigh against transfer, one is of paramount importance. Having considered the factors in their totality and treated Puffco's choice of this forum as a paramount consideration, I find that KandyPens has failed to demonstrate that the *Jumara* factors weigh strongly in favor of transfer.[3]

---

[3] KandyPens identified in its motion only § 1404(a) as the legal basis for its transfer request. In its briefing, however, KandyPens asked that, "[i]n the event that the § 1404 factors present a 'close call,'" I transfer the case to the California court "under the principle of comity enforced by the 'first-filed rule.'" D.I. 11 at 11. I do not believe the § 1404 factors present a close call; but in any event, the first-filed rule does not apply here because this case is not truly duplicative of the California case. *See Grider v. Keystone Health Plan Cent., Inc.*, 500 F.3d 322, 333 n.6 (holding that for the first-filed rule to apply, "[t]he later-filed case must be truly duplicative of the suit before [the court]." (internal quotation marks and citation omitted)). "Truly duplicative" means "the one [case] must be materially on all fours with the other." *Id.* In other words, "the issues [in the two cases] must have such an identity that a determination in one action leaves little or nothing to be determined in the other." *Id.* (internal quotation marks and citation omitted). Although the parties in this case and the California case are the same, the issues and subject matter are not. *See Astrazeneca v. Dr. Reddy's Labs., Inc.*, 209 F. Supp. 3d 744, 750 (D. Del. 2016) (noting that the two lawsuits there "involve[d]

15

## III.  CONCLUSION

For the reasons discussed above, I will deny the KandyPens's motion to transfer venue.

The Court will enter an order consistent with this Memorandum Opinion.

---

different controversies, different statutes, different remedies" and thus did not warrant the application of the first-filed rule).  Patent infringement claims are not truly duplicative of false advertising, unfair competition, deceptive trade practices, or trade libel claims.